UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
───────────────────────────────

JAY BRADSHAW,

                    Plaintiff,

          v.                                      9:19-CV-0931
                                                  (BKS/DJS)
W. BURNS, et al.,

                    Defendants.
───────────────────────────────

APPEARANCES:

JAY BRADSHAW
08-A-3654
Plaintiff, pro se
Southport Correctional Facility
P.O. Box 2000
Pine City, NY 14871


BRENDA K. SANNES
United States District Judge

## DECISION AND ORDER

### I.    INTRODUCTION

Plaintiff Jay Bradshaw commenced this action by filing a pro se civil rights complaint

pursuant to 42 U.S.C. § 1983 ("Section 1983"), together with an application for leave to

proceed in forma pauperis ("IFP"), and a motion for preliminary injunctive relief.  Dkt. No. 1

("Compl."); Dkt. No. 6 ("IFP Application"); Dkt. No. 4 ("Preliminary Injunction Motion").[1]  By

Decision and Order of this Court filed on October 1, 2019, plaintiff's IFP Application was

───────────────────

[1]    Plaintiff's initial application to proceed IFP was denied as incomplete and the action was
administratively closed.  Dkt. No. 5.  Plaintiff then re-filed his IFP Application, and this action was re-opened.
Dkt. Nos. 6, 7.

granted in accordance with 28 U.S.C. § 1915(g) based on the Court's determination that plaintiff made a preliminary showing that he is entitled to the "imminent danger" exception, and following review of the complaint pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b), some of plaintiff's claims and some of the named defendants were dismissed and service and a response was directed for the claims against certain named defendants that survived sua sponte review.  Dkt. No. 9 ("October 2019 Order").[2]

Following the issuance of the October 2019 Order, plaintiff was transferred to Southport Correctional Facility, one of the named defendants was served, and counsel for that defendant filed an opposition to the Preliminary Injunction Motion.  *See* Dkt. No. 11 ("Notice of Change of Address"); Dkt. No. 14 ("Acknowledgment of Service for Defendant Russell"); Dkt. No. 16 ("Opposition to Preliminary Injunction Motion").  By Decision and Order filed on December 12, 2019, plaintiff's Preliminary Injunction Motion was denied.  Dkt. No. 25.

On December 19, 2019, an answer was filed on behalf of defendants Burns, Huntley, Kotory, Russell, Smoyer, and Trotz, and the next day, a Mandatory Pretrial Discovery and Scheduling Order was issued.  Dkt. No. 27 ("Answer"); Dkt. No. 28 ("Scheduling Order").

Presently before the Court is plaintiff's amended complaint.  Dkt. No. 31 ("Am. Compl.").

## II.    DISCUSSION

### A.    The Complaint and October 2019 Order

In his original complaint, plaintiff asserted claims based on alleged wrongdoing that

---

[2]  The Court also directed a response to plaintiff's Preliminary Injunction Motion and advised plaintiff of his obligation to take reasonable steps to ascertain the identity of the "Doe" defendants remaining in the case. *See* October 2019 Order at 26-27.

occurred while he was incarcerated at Mid-State Correctional Facility ("Mid-State C.F.") in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS").  *See generally* Compl.

The complaint was construed to assert the following claims: (1) a Fourth Amendment unlawful search claim against defendants Creigo and Corrections Sergeant John Doe #1; (2) Eighth Amendment conditions-of-confinement claims against defendants Kotory, Russell, Palmer, Huntley, Jennings, Smoyer, Whitman, Corrections Officers John Doe #1-14, and Corrections Sergeants John Doe #2-10 based on interference with plaintiff's sleep; and (3) Eighth Amendment conditions-of-confinement claims against defendants Huntley, Corrections Sergeant John Doe #10, Corrections Officer Jane Doe, Trotz, and Shorts based on interference with plaintiff's access to meals.  *See* October 2019 Order at 11-12.

After reviewing the complaint pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b), the Court found that plaintiff's Eighth Amendment conditions-of-confinement claims against defendants Burns, Kotory, Russell, Smoyer, Whitman, Huntley, Trotz, Corrections Officers John Doe #11-13, Corrections Officer Jane Doe, and Corrections Sergeants John Doe #8-10 in their individual capacities survived sua sponte review and required a response.  *See* October 2019 Order at 25.  Plaintiff's official capacity claims were dismissed with prejudice, and his remaining claims were dismissed without prejudice for failure to state a claim upon which relief may be granted.  *Id.* at 25-26.  Defendants Creigo, Palmer, Jennings, Shorts, Corrections Officers John Doe #1-10, Corrections Officers John Doe #14-15, and Corrections Sergeants John Doe #1-7 were also terminated as defendants. *Id.* at 26.

3

### B.    Overview of the Amended Complaint

Plaintiff's amended complaint re-asserts each of the claims contained in the original complaint, and also asserts new claims based on events that allegedly occurred after the filing date of the original complaint.  *See generally*, Am. Compl.  The amended complaint contains new allegations in support of plaintiff's claims, and names all of the defendants named in the original complaint except defendant Shorts, as well as several new defendants.  *Id*.  The following facts are set forth as alleged in the amended complaint.

### 1. Strip Search

On May 24, 2019, plaintiff was confined in the special housing unit ("SHU") at Downstate Correctional Facility, where he was "compelled to submit[ ] to a strip search by removing all of his clothing, lifting his genitals and spreading his buttock while bending over at the waist."  Am. Compl. at 2.  "After the strip search, [plaintiff] was placed on a bus and was continuously under officers' surveillance."  *Id.* at 3.  Despite having "no opportunity to obtain contraband[,]" and DOCCS' directives and policies "prohibit[ing] strip searches of inmates transferred from one SHU to another," defendant Corrections Officer Creigo forced plaintiff to submit to a strip search upon his arrival at Mid-State C.F.  *Id.*

### 2. Cell Conditions

Throughout plaintiff's confinement at Mid-State C.F., i.e., between May 24 and October 6, 2019, he resided in a SHU cell in which a 15-Watt florescent night light remained on twenty-four hours a day.  Am. Compl. at 4.  A "stadium style" light also "beam[ed] in to the cell through the cell window and recreation pen door window directly over the bed[,]" and remained on twenty-fours hours a day.  *Id.*  Plaintiff complained to defendant Deputy Superintendent for Security and Acting Superintendent W. Burns about the lighting in his cell

4

on June 14, 2019, and separately filed "numerous complaints" about this condition. *Id.* Defendant Burns advised plaintiff that he ordered the night lights installed, and that the lights "must remain on all night" and plaintiff is "not to cover the night light[.]" *Id.*

On May 25, 2019, at approximately 11 p.m., defendant Corrections Officer Kotory "appeared" at plaintiff's cell and directed him to remove the towel covering the night light. Am. Compl. at 5. Plaintiff refused to comply with the directive and told defendant Kotory that "the brightness of the night light made it difficult [to] sleep[.]" *Id.* Defendant Kotory then left, and shortly thereafter, the "area supervisor" arrived at plaintiff's cell and similarly instructed plaintiff to remove the towel covering the night light. *Id.* Plaintiff once again refused the directive. *Id.* at 5-6.

Over the next several hours, defendant Kotory and defendant Corrections Officer Doe #1, at the direction of defendant Corrections Sergeant Doe #1, proceeded to "bang on [plaintiff's] cell door during rounds to awake or keep [plaintiff] awake[.]" Am. Compl. at 6.[3] The next night, the same defendants engaged in the same conduct. *Id.*

Each night thereafter, until plaintiff was transferred to Southport Correctional Facility, a corrections sergeant directed the corrections officer(s) on night duty in the SHU to "bang on" plaintiff's cell door during rounds to keep him awake. Am. Compl. at 6-14. The following additional defendants were involved in this conduct: Corrections Sergeants Doe #2-29; Corrections Officers Doe #2-79; Corrections Officer Russell; Corrections Officer Palmer; Corrections Officer Huntley; Corrections Officer Jennings; Corrections Officer Smoyer; Corrections Officer Whitman; Corrections Officer Rella; Corrections Officer Toozer; and

---

[3] The amended complaint names several "Doe" defendants, but does identify these defendants with a "Jane" or "John" designation, as plaintiff did in the original complaint.

Corrections Officer Mason.  *Id.*

On July 15, 2019, plaintiff submitted a grievance regarding the banging on his cell door at the direction of the supervising sergeant.  Am. Compl. at 10-11.  Defendant Burns was also "placed on notice of the officers['] conduct and the affects [sic] on [plaintiff's] health."  *Id.* at 14.

### 3. Meals

Between July 27 and August 1, 2019, plaintiff was denied thirteen out of eighteen meals by various corrections officers.  Am. Compl. at 14-15.  After each denial, one of the corrections officers who participated in the denial would notify a corrections sergeant of the denial "over the radio."  *Id.*  The following defendants were involved in denying plaintiff meals: Huntley; Corrections Officer Doe #80; Corrections Officer Sweet; Corrections Officer Rogers; Corrections Officer Lynch; Corrections Sergeant Trotz; Corrections Sergeant Doe #30; Corrections Sergeant Doe #31; and Corrections Sergeant Doe #32.  *Id.*

On August 9, 2019, defendants Russell and Corrections Officer Matlock denied plaintiff "his two milks from his breakfast tray, which deprived him of an adequate diet, in retaliation [for plaintiff] filing grievances regarding the officers, including defendant Russell, banging on [his] cell door during the night . . . and . . . [depriving him of] food."  Am. Compl. at 16.  That same day, defendant Corrections Officer Pesek "deprived [plaintiff] his matzos and juice[,] which is part of his religious diet[.]"  *Id.*

On August 10, 2019, defendant Rogers also denied plaintiff "his matzo and juice[.]"  Am. Compl. at 16.  On August 12 and 13, 2019, defendants Matlock and Smoyer denied plaintiff "his breakfast milks to deprive him of an adequate diet, in retaliation for [plaintiff] filing grievances."  *Id.*

6

Plaintiff was also denied "matzos and juice" by defendant Pesek on August 16, 2017, by defendant Rogers on August 17, 2019, by defendant Trotz on August 23, 2019, by defendant Corrections Officer Witzigman on August 24, 2019, and by defendant Doe #81 on August 31, 2019. Am. Compl. at 16-17.

On September 10, 2019, defendant Jennings denied plaintiff a dinner tray, which was part of his necessary and religious diet. Am. Compl. at 17. On September 21 and 22, 2019, defendant Smoyer denied plaintiff his "breakfast milks[.]" *Id.*

### 4. Mail

On June 4, 2019, plaintiff "attempt[ed] to send a notice of intention to file a claim, certified mail - return receipt requested, to the attorney general." Am. Compl. at 17. Plaintiff "attached to the envelope a disbursement form and an advance request form because he had no monies in his inmate accounts." *Id.*

On June 12, 2019, defendant Corrections Officer Doe #82 returned the mail, along with the disbursement and advance forms, with a note that read, "special handling must have money." Am. Compl. at 18. The next day, plaintiff "re-sent the mail with another disbursement and advance form [and a] notation simply stating [that] advance postage for a notice of intention to file claim, certified mail - return receipt requested, to the attorney general is permissible per DOCCS directive." *Id.* Thereafter, defendant Corrections Officer Doe #83 "returned the mails with the disbursement and advance forms [and a] note[,]" which read, "must have money to cover special handling." *Id.*

On or about June 30, 2019, plaintiff submitted a grievance about "being indigent and denied funds to pay the certified mail - return receipt requested." Am. Compl. at 18. "It is

DOCCS policy to provide funds for indigent prisoners who send a notice of intention to file a claim, certified mail - return receipt requested, to the attorney general." *Id.*

On August 7, 2019, plaintiff received a letter from his attorney, who "expressed his efforts to communicate with him, and that his correspondence sent to Mid-State had been returned to him with a note[, which read,] 'recipient could not be read.'" Am. Compl. at 18. On August 14, 2019, plaintiff attempted to send two notices of intention to file a claim by certified mail to the attorney general. *Id.* at 19. The next day, defendant Corrections Officer Doe #84 returned plaintiff's mail with a note, which stated, "special handling cannot be encumbered or advanced." *Id.*

On August 20, 2019, plaintiff received "five (5) legal mails that were unnecessarily held for several days before they were delivered to him." Am. Compl. at 19. On August 28, 2019, plaintiff received "two (2) legal mails[,]" which were date-stamped "Received Aug. 26, 2019[.]" *Id.* The previous day, defendant Smoyer delivered legal mail during rounds, but did not deliver anything to plaintiff. *Id.*

On October 2, 2019, defendant Corrections Officer Glinton visited plaintiff at his cell and "mockingly stated, 'Bradshaw, you have legal.'" Am. Compl. at 19. Defendant Glinton, however, did not give plaintiff his legal mail until the next day. *Id.*

### 5. Recreation

On July 28, 2019, defendant Trotz ordered defendant Corrections Officer Doe #85 not to open the recreation pen door in plaintiff's cell "to deprive him of recreation in retaliation for his misbehavior" the previous day. Am. Compl. at 19-20. Between July 29 and August 1, 2019, defendant Corrections Sergeant Doe #33 ordered defendant Corrections Officer Doe

8

#86 not to open plaintiff's cell recreation pen door "to deprive him of recreation in retaliation for [his] misbehavior on July 27, 2019." *Id.* at 20.

### 6. Plaintiff's Claims

Liberally construed, the amended complaint asserts the following claims against the named defendants in their individual capacities: (1) a Fourth Amendment unlawful search claim against defendant Creigo; (2) Eighth Amendment conditions-of-confinement claims against defendants Burns, Kotory, Russell, Smoyer, Whitman, Huntley, Trotz, Palmer, Jennings, Rella, Toozer, Corrections Officers Doe #1-79, and Corrections Sergeants Doe #1-29 based on interference with plaintiff's sleep; (3) Eighth Amendment conditions-of-confinement claims against defendants Huntley, Trotz, Sweet, Rogers, Lynch, Russell, Matlock, Pesek, Smoyer, Witzigman, Jennings, Corrections Officers Doe #80-81, and Corrections Sergeants Doe #30-32 based on interference with plaintiff's access to meals; (4) Eighth Amendment conditions-of-confinement claims against defendants Trotz, Corrections Officers Doe #85-86, and Corrections Sergeant Doe #33 based on denying plaintiff access to recreation; (5) First Amendment free exercise claims against defendants Russell, Matlock, Pesek, Rogers, Smoyer, Trotz, Witzigman, Jennings, and Doe #81;[4] (6) First Amendment retaliation claims against defendants Russell, Matlock, Pesek, Rogers, Smoyer, Trotz, Witzigman, Jennings, Corrections Officers Doe #81, #85, and #86, and Corrections Sergeant Doe #33; and (7) First Amendment free-flow-of-mail and access-to-courts claims against defendants Smoyer, Glinton, and Corrections Officers Doe #82-84.

---

[4] Although plaintiff alleges that he was denied 13 out of 18 meals between July 27 and August 1, 2019, he does not assert a free exercise claim with respect to these alleged denials. *See* Am. Compl. at 21. Instead, plaintiff's free exercise claim is asserted against only the officials who allegedly denied him "matzos and juice" between August 9 and September 22, 2019. *See id*. at 14-17, 20-21.

For a more complete statement of plaintiff's claims, reference is made to the amended complaint.

### C.    Analysis

Because plaintiff is proceeding in forma pauperis and is an inmate suing government employees, his amended complaint must be reviewed in accordance with 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b).  The legal standard governing the dismissal of a pleading for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) was discussed at length in the October 2019 Order and it will not be restated in this Decision and Order.  *See* October 2019 Order at 6-8.

### 1.  Strip Search Claim

The legal standard governing unlawful search claims was discussed at length in the October 2019 Order and it will not be restated in this Decision and Order.  *See* October 2019 Order at 15-16.  The Court would add only that the Second Circuit held, in the context of a Fourth Amendment claim brought on behalf of detained juveniles subjected to strip searches before and after their transfer from one detention facility to another, even though they had been shackled and supervised during the pendency of the transfer, that the State does not have an "interest sufficient to warrant repeated strip searches simply because of transfers to other facilities." *N.G. v. Connecticut*, 382 F.3d 225, 233-34 (2d Cir. 2004).  The court further determined that the state's ability to "maintain surveillance during custody after an initial strip search . . . render[ed] unreasonable a subsequent strip search in the absence of a reasonable suspicion of possession of contraband." *Id.* at 234.  Since then, the Circuit has

reaffirmed that a strip search policy is not "reasonably related to penological interests" where inmates are searched "when there was no possibility that they could have obtained contraband." *See Turkmen v. Hasty*, 789 F.3d 218, 260 (2d Cir. 2015), *rev'd in part on other grounds sub nom. Ziglar v. Abasi*, 17 S. Ct. 1843 (2017).

Although the Court previously dismissed this claim, the amended complaint expressly alleges that plaintiff had no opportunity to obtain contraband between when he was searched at Downstate Correctional Facility and when he was searched at Mid-State C.F., and that DOCCS' policies and directives prohibit inmates from being strip searched when transferred from one SHU location to another. Accepting these new allegations as true, and mindful of the Second Circuit's directive that a pro se plaintiff's pleadings must be liberally construed, *see Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008), the Court finds that plaintiff's Fourth Amendment unlawful search claim against defendant Creigo survives sua sponte review and requires a response. In so ruling, the Court expresses no opinion as to whether this claim can withstand a properly filed dispositive motion.

## 2. Conditions-of-Confinement Claims

The legal standard governing plaintiff's conditions-of-confinement claims based on interference with sleep and access to meals was discussed at length in the October 2019 Order and it will not be restated in this Decision and Order. *See* October 2019 Order at 17-23. With respect to plaintiff's conditions-of-confinement claim based on the denial of recreation, the legal standard is discussed more fully below.

### (a) Cell Conditions

In the October 2019 Order, the Court found that plaintiff's claims based on his cell

conditions at night warranted a response from defendant Burns and the defendants allegedly involved in "banging" on his cell to keep him awake on more than one occasion. *See* October 2019 Order at 19-21.

The allegations in the amended complaint are more specific than the allegations in the original complaint with respect to plaintiff's conditions-of-confinement claims based on interference with his sleep, and plausibly suggest that (1) the "banging" on plaintiff's cell occurred every night between May 25 and October 6, 2019, (2) almost every defendant allegedly involved in "banging" on plaintiff's cell either engaged in this activity more than once, or was directed to engage in this activity by a superior officer who was aware that this activity had previously occurred, and (3) the "banging" prevented plaintiff from sleeping. *Compare* Compl. *with* Am. Compl.

Accordingly, and for the reasons set forth in the October 2019 Order, plaintiff's Eighth Amendment conditions-of-confinement claims against defendants Burns, Kotory, Russell, Smoyer, Whitman, Huntley, Trotz, Palmer, Jennings, Rella, Toozer, Corrections Officers Doe #1-79, and Corrections Sergeants Doe #1-29 based on interference with his sleep survive sua sponte review and require a response. In so ruling, the Court expresses no opinion as to whether these claims can withstand a properly filed dispositive motion.

### (b) Meals

In the October 2019 Order, the Court found that plaintiff's claims against the defendants allegedly involved in denying him more than one meal on July 26 and July 27, 2019, survived sua sponte review and required a response. *See* October 2019 Order at 22.

The amended complaint contains supplemental allegations regarding alleged meal deprivations that occurred on five consecutive days after the filing date of the original

12

complaint, as well as an allegation that each of these meal deprivations was recorded in the "log book per DOCCS policy." *See* Am. Compl. at 14-15. Plaintiff also separately alleges that certain officials denied him an "adequate diet" by depriving him of meal items on a limited number of occasions between August 9 and September 22, 2019. *Id.* at 16-17.

Insofar as plaintiff has asserted a conditions-of-confinement claim based on being denied thirteen out of eighteen meals over a six-day period, the Court finds, for the reasons set forth in the October 2019 Order, that a response to this claim is warranted. Accordingly, plaintiff's Eighth Amendment conditions-of-confinement claim against defendants Huntley, Trotz, Sweet, Rogers, Lynch, Corrections Officer Doe #80, and Corrections Sergeants Doe #30-32 based on denying him access to meals between July 27 and August 1, 2019, survives sua sponte review and requires a response. In so ruling, the Court expresses no opinion as to whether this claim can withstand a properly filed dispositive motion.

The Court, however, reaches a different conclusion with respect to plaintiff's Eighth Amendment "inadequate diet" claim, which is based on allegations that various corrections officials deprived him of a constitutionally adequate diet by denying him "matzos and juice" on eight occasions, "two milks" on four occasions, and a dinner meal on one occasion between August 9 and September 22, 2019. *See* Am. Compl. at 16-17.[5]

As an initial matter, the amended complaint does not allege that plaintiff did not receive anything to drink on the occasions in which he was denied milk or juice, or say anything about whether the sink in his cell was dispensing safe drinking water during this time. Similarly, plaintiff does not allege that he did not receive anything else to eat on the

---

[5] Plaintiff's free exercise and retaliation claims based on alleged denials of food and drink items between August 9 and September 22, 2019, are addressed separately, below.

13

occasions in which he was denied matzos.  Furthermore, the amended complaint is devoid of any allegations which plausibly suggest that any of the alleged food or drink deprivations placed plaintiff's health and well being in any danger.  *See Robles v. Coughlin*, 725 F.2d 12, 15 (2d Cir. 1983) (noting that the Eighth Amendment requires that prisoners be provided with "nutritionally adequate food that is prepared and served under conditions which do not present an immediate danger to the health and well being of the inmates who consume it." (quotation marks and citation omitted)).  Thus, there is no basis for the Court to plausibly infer that plaintiff was denied a nutritionally adequate diet based on the alleged deprivations he experienced between August 9 and September 22, 2019.  *See, e.g., Crichlow v. Fischer*, No. 9:17-CV-00194 (TJM/TWD), 2017 WL 6466556, at *14 (N.D.N.Y. Sept. 5, 2017) (rejecting argument that providing "general population" meals instead of special diet meals on three out of four consecutive days was sufficient to state an Eighth Amendment claim), *report and recommendation adopted by* 2017 WL 6459512 (N.D.N.Y. Dec. 18, 2017); *Edwards v. Horn*, No. 10-CV-6194, 2012 WL 760172, at *8-9 (S.D.N.Y. Mar. 8, 2012) (alleged denial of two meals, one-time denial of prescribed therapeutic diet soy milk, and one-time denial of a "second chicken patty" over a six-month period was insufficient to state an Eighth Amendment claim); *Barclay v. New York*, 477 F. Supp. 2d 546, 554-55 (N.D.N.Y. 2007) (being denied food for two or three days for a messhall violation did not amount to a constitutional violation).

       In addition, even if the Court were to assume that plaintiff was denied a nutritionally adequate diet by being deprived of a single dinner meal out of the approximately 132 meals he received between August 9 and September 22, 2019, along with milk or juice for 13 of these meals and matzos for 9 of these meals, the amended complaint is devoid of any

14

allegations which plausibly suggest that any of the corrections officials who allegedly denied plaintiff these meal items did so despite knowing that plaintiff was suffering from complications as a result of an inadequate diet.  Indeed, the amended complaint lacks any allegations which plausibly suggest that plaintiff notified any corrections official, after any of the alleged occasions in which he did not receive a particular food or drink item, that he was not receiving nutritionally adequate food or drink.  *Cf. Evans v. Albany Cnty. Corr. Facility*, No. 9:05-CV-1400, 2009 WL 1401645, at *9 (N.D.N.Y. May 14, 2009) (finding that if a prisoner fails to advise staff of his medically prescribed dietary needs, "deliberate indifference does not exist"); *Abdush-Shahid v. Coughlin*, 933 F. Supp. 168, 180 (N.D.N.Y. 1996) ("Mere negligence or inadvertent failure to provide a medically necessary diet is not a constitutional violation[.]").  Thus, the allegations in the amended complaint are also insufficient to satisfy the subjective element of this Eighth Amendment claim.

Accordingly, plaintiff's Eighth Amendment "inadequate diet" claim against defendants Russell, Matlock, Pesek, Smoyer, Witzigman, Jennings, and Corrections Officer Doe #81 is dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

### (c)  Recreation

"Because exercise is one of the basic human needs protected by the Eighth Amendment, prisoners must be afforded some opportunity for exercise."  *Davidson v. Coughlin*, 968 F. Supp. 121, 129 (S.D.N.Y.1997) (citing *Williams v. Greifinger*, 97 F.3d 699, 704 (2d Cir. 1996)).  The right to exercise, however, is not limitless, nor does it guaranty an inmate's ability to participate in all forms of recreation.  *Id.*  Moreover, isolated interruptions or denials of the right to exercise do not amount to a violation of an inmate's Eighth Amendment

rights. *See Branham v. Meachum*, 77 F.3d 626, 630-31 (2d Cir. 1996) (finding that keeping inmate on lockdown and "full restraint" status without outdoor exercise for a period of approximately twenty-two days does not violate the Eighth Amendment); *Barnes v. Craft*, No. 04-CV-1269 (MAD/GHL), 2008 WL 3884369, at *9 (N.D.N.Y. Aug. 18, 2008) (denial of outdoor exercise "for six days [was] simply not sufficiently severe and prolonged to rise to the level of an Eighth Amendment violation"); *Gibson v. City of New York*, No. 96-CV-3409, 1998 WL 146688, at *3 (S.D.N.Y. Mar. 25, 1998) (denial of recreation for eight days in a sixty-day period and the opportunity to exercise on two consecutive days found not constitutionally actionable).

In this case, plaintiff alleges that he was denied outdoor exercise on five consecutive days between July 28 and August 1, 2019. Am. Compl. at 19-20. As noted, courts have rejected Eighth Amendment claims based on similar isolated limitations on outdoor exercise. *See Branham*, 77 F.3d at 630-31; *Barnes*, 2008 WL 3884369, at *9. Morever, the amended complaint lacks any allegations which plausibly suggest that plaintiff was unable to exercise in his cell during this time period. *See Huggins v. Schriro*, No. 14-CV-6468, 2015 WL 7345750, at *6 (S.D.N.Y. Nov. 19, 2015), *report and recommendation adopted by* 2016 WL 680822 (S.D.N.Y. Feb. 18, 2016) (dismissing claim where plaintiff had not alleged that he could not exercise in his cell).

Accordingly, plaintiff's Eighth Amendment conditions-of-confinement claim based on the denial of recreation is dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

### 3. Free Exercise Claims

The First Amendment to the United States Constitution guarantees the right to free

exercise of religion.  *See* U.S. Const. amend. I; *Cutter v. Wilkinson*, 544 U.S. 709, 719 (2005).  As is true with regard to the First Amendment generally, the free exercise clause applies to prison inmates, subject to appropriate limiting factors.  *See Ford v. McGinnis*, 352 F.3d 582, 588 (2d Cir. 2003) (holding that "[p]risoners have long been understood to retain some measure of the constitutional protection afforded by the First Amendment's Free Exercise Clause" (citing *Pell v. Procunier*, 417 U.S. 817, 822 (1974)).

To state a claim under the Free Exercise Clause of the First Amendment, an inmate "must show at the threshold that the disputed conduct substantially burdens his sincerely held religious beliefs." *Salahuddin*, 467 F.3d at 274-75 (articulating test that inmates "must show at the threshold that the disputed conduct . . . burdens his sincerely held religious beliefs," prior to advancing to the *Turner* test and "legitimate penological interests that justify the impinging conduct").  "For a burden to be substantial, a plaintiff must demonstrate that the government's action pressures him to commit an act forbidden by his religion or prevents him from engaging in conduct or having a religious experience mandated by his faith." *Booker v. Maly*, No. 9:12-CV-246 (NAM/ATB), 2014 WL 1289579, at *22 (N.D.N.Y. Mar. 31, 2014), *aff'd*, 590 Fed. App'x 82 (2d Cir. 2015) (summary order); *Brandon v. Kinter*, 938 F.3d 21, 36 (2d Cir. 2019) (rejecting the argument that in deciding what constitutes a substantial burden, courts must "be made to decide the number of violations of a particular religious tenet that make a sin grievous").

In this case, the amended complaint alleges that between August 9 and September 22, 2019, plaintiff was denied one meal, as well as certain food and drink items that are part of a religious meal on eight occasions.  The amended complaint, however, fails to identify plaintiff's religion.  Moreover, plaintiff does not allege that eating matzos and drinking juice is

a central tenet of his religion.  Thus, the Court has no basis to plausibly infer that the alleged

food and drink deprivations placed a substantial burden on plaintiff's sincerely held religious

beliefs.  *See Sassi v. Dutchess Cty*., No. 9:16-CV-1450 (TJM), 2017 WL 4773320, at *8

(N.D.N.Y. Oct. 20, 2017) (finding, where "[p]laintiff allege[d] that he was prevented from

accessing a Bible (either his own or one purchased from the Jail's commissary) for seven

days, and denied participation in Bible study classes while incarcerated at the Warren

County Jail[,]" that the amended complaint failed to state a free exercise claim because it

was "devoid of any allegations that would establish that Plaintiff has a sincerely held religious

belief, or that preventing him from accessing a Bible for seven days or attending Bible study

classes substantially burdened that belief"); *Gilliam v. Baez*, No. 15-CV-6631, 2017 WL

476733, at *4 (S.D.N.Y. Feb. 2, 2017) ("Plaintiff does not allege that the specific services

were central or important to his faith. . . . Accordingly, the Court grants Defendants' Motion to

Dismiss Plaintiff's First Amendment claims on the grounds that Plaintiff has failed to make a

threshold showing that the disputed conduct substantially burdened his sincerely held

religious beliefs.") (internal quotation marks and citations omitted); *Abreu v. Travers*, No.

9:15-CV-0540 (MAD/ATB), 2016 WL 6127510, at *14 (N.D.N.Y. Oct. 20, 2016) ("Here,

plaintiff fails to identify his religion, thus making it impossible for the Court to determine if the

denial of one kosher meal placed a substantial burden on his religious beliefs. Plaintiff

alleges no facts to suggest that defendants interfered with a tenet or belief that is central to

any religious doctrine. Accordingly, plaintiff's First Amendment free exercise claims against

defendants Forbes, Jarvis, and Santamore are dismissed pursuant to 28 U.S.C. § 1915A(b)

for failure to state a claim upon which relief may be granted."); *Shapiro v. Cmty. First Servs*.,

Inc., No. 11-CV-4061, 2014 WL 1276479, at *10 (E.D.N.Y. Mar. 27, 2014) ("At the motion to

dismiss stage, a complaint must assert sufficient allegations necessary to establish that [the] plaintiff's claim is based upon a sincerely held religious belief.") (alteration and internal quotation marks omitted); *Leach v. New York City*, No. 12-CV-3809, 2013 WL 3984996, at *2 (S.D.N.Y. Aug. 2, 2013) ("Leach does not assert that eating matzos on a regular basis is a central tenet of Judaism, nor does he specify how often he was denied access to Kosher meals, if at all. The intermittent failure to provide incarcerated individuals with food complying with their religious dietary restrictions is a de minimis imposition falling far short of the substantial burden requirement."); *cf. Farid v. Smith*, 850 F.2d 917, 926 (2d Cir. 1988) ("Because [the plaintiff] has neither alleged nor submitted any proof that he sincerely holds to any religious belief that mandates the use of Tarot cards, we conclude that summary judgment was appropriate on the free exercise claim.").

Accordingly, plaintiff's First Amendment free exercise claims are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

### 4. Retaliation Claims

Courts must approach claims of retaliation "'with skepticism and particular care' because 'virtually any adverse action taken against a prisoner by a prison official–even those otherwise not rising to the level of a constitutional violation–can be characterized as a constitutionally proscribed retaliatory act.'" *Davis v. Goord*, 320 F.3d 346, 352 (2d Cir. 2003) (quoting *Dawes v. Walker*, 239 F.3d 489, 491 (2d Cir. 2001), *overruled on other grounds*, *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002)).  To state a plausible claim, a plaintiff asserting a First Amendment retaliation claim must advance "non-conclusory" allegations establishing "(1) that the speech or conduct at issue was protected, (2) that the defendant

took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech [or conduct] and the adverse action." *Davis*, 320 F.3d at 352 (quoting *Dawes*, 239 F.3d at 492).

The Second Circuit has defined "adverse action" as "retaliatory conduct 'that would deter a similarly situated individual of ordinary firmness from exercising . . . constitutional rights.'" *Gill v. Pidlypchak*, 389 F.3d 379, 380 (2d Cir. 2004) (quoting *Davis*, 320 F.3d at 353). Conduct that is "de minimis" does not give rise to actionable retaliation. *Dawes*, 239 F.3d at 493. Moreover, "a complaint which alleges retaliation in wholly conclusory terms may safely be dismissed on the pleadings alone." *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983).

Insofar as plaintiff asserts a First Amendment retaliation claim based on allegations that he was denied recreation "for his misbehavior on July 27, 2019," *see* Am. Compl. at 20, plaintiff's unidentified "misbehavior" is not protected activity. Accordingly, plaintiff's retaliation claims based on being denied recreation are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

Insofar as plaintiff asserts a First Amendment retaliation claim based on allegations that he was denied food and drink items because of grievances he filed, the amended complaint lacks any allegations which plausibly suggest that any of the officials who allegedly denied plaintiff meal items other than defendant Russell were aware of any of plaintiff's prior grievances. *See Brooks v. Hogan*, No. 9:14-CV-0477 (LEK/DJS), 2017 WL 1025966, at *3 (N.D.N.Y. Mar. 16, 2017) (finding "no basis in the Complaint for a First Amendment retaliation claim against Velte" where there was "no indication that he was aware of any

20

protected speech that Brooks had engaged in, or that he was retaliating against Brooks for that speech"); *Wilson v. Kelly*, No. 9:11-CV-0030 (MAD/RFT), 2012 WL 3704996, at *9 (N.D.N.Y. Aug. 27, 2012) (claim dismissed due to failure by plaintiff to allege plausibly that protected activity was causally connected to any alleged adverse action taken by the defendant where plaintiff failed to allege that the defendant was aware of the protected activity); *Smith v. Miller*, No. 15-CV-9561, 2017 WL 4838322, at *7 (S.D.N.Y. Oct. 23, 2017) ("While there may exist instances in which retaliation claims may be established against defendants who were not personally involved in the original incident, at a minimum, plaintiffs must allege that such defendants have personal knowledge of the protected activity that purportedly motivated the retaliatory conduct.").

Furthermore, with respect to defendant Russell, the amended complaint alleges that he denied plaintiff matzos and juice on one occasion. *See* Am. Compl. at 16. The Court has no basis to plausibly infer that the alleged denial of matzos and juice -- items that were apparently part of a larger meal -- on one occasion would chill a person of ordinary firmness from continuing to engage in First Amendment activity. *See, e.g., Hill v. Laird*, No. 06-CV-126, 2014 WL 1315226, at *11 (E.D.N.Y. Mar. 31, 2014) (holding that the defendant's alleged "refusal to give [the] [p]laintiff his food" on one occasion "[did] not rise to the level of adverse actions"); *Edwards*, 2012 WL 760172, at *14 n.13 ("The denial of meals on two occasions, separated by more than three months, is de minimis and not actionable." (italics omitted)); *Holmes v. Grant*, No. 03-CV-3426, 2006 WL 851753, at *15 (S.D.N.Y. Mar. 31, 2006) (finding that the plaintiff's allegation that the defendants "served him a meal without veal" did not state a claim for retaliation); *Snyder v. McGinnis*, No. 03-CV-902, 2004 WL 1949472, at *11 (W.D.N.Y. Sept. 2, 2004) ("But even if the Court were to assume that the

21

denial of food to the plaintiff on two occasions constituted acts of retaliation, the Court finds that the actions complained of were de minimis and not actionable; such actions, even if proven at trial, would not chill a person of ordinary firmness from continuing to engage in First Amendment activity.").

Accordingly, plaintiff's retaliation claims based on being denied food and drink items are also dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

### 5. Access-to-Courts Claims

In *Bounds v. Smith*, the Supreme Court held that access to the courts is a fundamental right that requires prison authorities to "assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." 430 U.S. 817, 828 (1977). The right of access to the courts is also implicated when a prisoner experiences interference with his mail. *Davis v. Goord*, 320 F.3d 346, 351 (2d Cir. 2003).

The "right of access to the courts" requires States "to give prisoners a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights." *Bounds*, 430 U.S. at 828, *modified on other grounds, Lewis v. Casey*, 518 U.S. 343, 350 (1996); *see also Bourdon v. Loughren*, 386 F.2d 88, 92 (2d Cir. 2004).[6] "However, this right is not 'an abstract, freestanding right . . . .' and cannot ground a Section 1983 claim without a showing of 'actual injury.'" *Collins v. Goord*, 438 F. Supp. 2d 399, 415 (S.D.N.Y. 2006)

---

[6] "[A] person's right of access to the courts has been found to arise not only under the First Amendment but under other parts of the Constitution, including the Due Process Clause of the Fourteenth Amendment." *Lasher v. Dagostino*, No. 9:16-CV-0198 (BKS), 2016 WL 1717205, at *4 (N.D.N.Y. Apr. 28, 2016) (collecting cases).

(quoting *Lewis*, 518 U.S. at 351).

To state a claim for denial of access to the courts, a plaintiff must assert non-conclusory allegations demonstrating that (1) the defendant acted deliberately, and (2) the plaintiff suffered an actual injury. *Lewis*, 518 U.S. at 353; *Konigsberg v. Lefevre*, 267 F. Supp. 2d 255, 261 (N.D.N.Y. 2003) ("Prison officials may only be held liable for such injury if they frustrated or impeded a prisoner's efforts to pursue a non-frivolous legal claim.").

"A hypothetical injury is not sufficient to state a claim for violation of the right of access to the courts." *Amaker v. Haponik,* No. 98-CV-2663, 1999 WL 76798, at *3 (S.D.N.Y. Feb. 17, 1999). Instead, a plaintiff must demonstrate "actual injury" by establishing that the denial "hindered his efforts" to pursue a non-frivolous legal claim. *Lewis*, 518 U.S. at 349, 351-53 (noting that "an inmate cannot establish relevant actual injury simply by establishing that his prison's law library or legal assistance program is subpar in some theoretical sense").

The Supreme Court has stated that in order to allege a denial of access to the courts claim, "the underlying cause of action, whether anticipated or lost, is an element that must be described in the complaint . . . ." *Christopher v. Harbury*, 536 U.S. 403, 415 (2002). The Supreme Court instructed that the underlying claim "must be described well enough to apply the 'nonfrivolous' test and to show that the 'arguable' nature of the underlying claim is more than hope." *Id.* at 415-16. "[T]he complaint should state the underlying claim in accordance with Federal Rule of Civil Procedure 8(a), just as if it were being independently pursued, and a like plain statement should describe any remedy available under the access claim and presently unique to it." *Id.* at 417-18 (footnote omitted).

"Finally, . . . the injury requirement is not satisfied by just any type of frustrated legal claim." *Lewis*, 518 U.S. at 354. Rather, the injury must be to an inmate's ability "to attack

[his] sentence[ ], directly or collaterally, [or] . . . to challenge the conditions of [his] confinement." *Id*. at 355. "Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration." *Id*.

Here, plaintiff does not allege that he was continuously denied access to legal mail or legal materials while incarcerated at Mid-State C.F. Rather, he alleges that he was prevented from filing notices of claims with the New York Attorney General on three occasions between June 4 and August 15, 2019, based on his failure to pay the cost of sending the notices by certified mail, and that he separately experienced a delay in his receipt of incoming legal mail. Am. Compl. at 17-19.

The amended complaint is devoid of any allegations which plausibly suggest that plaintiff suffered an "actual injury" in any legal proceeding as a result of the alleged issues he experienced with his mail. Plaintiff does not allege, for example, that he continued to be prevented from filing notices of claims with the New York Attorney General after August 15, 2019, and despite his alleged filing of a grievance on June 30, 2019, or that the refusal to send one or more of his notices by certified mail rendered one or more of his claims untimely. *See Davis*, 320 F.3d at 352 ("Mere 'delay in being able to work on one's legal action or communicate with the courts does not rise to the level of a constitutional violation.'" (quoting *Jermosen v. Coughlin*, 877 F.Supp. 864, 871 (S.D.N.Y. 1995)); *see also Warburton v. Underwood*, 2 F. Supp. 2d 306, 312 (W.D.N.Y. 1998) (dismissing claim for interference with access to courts where plaintiff did not make showing as to how challenged conduct hindered him). Furthermore, the amended complaint lacks any allegations regarding the underlying claim(s) that were the subject of the notices of claims that plaintiff attempted to file, and thus the Court also has no basis to plausibly infer that the arguable nature of the underlying

claim(s) was more than hope.

Accordingly, plaintiff's First Amendment access-to-courts claims are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

### 6. Free-Flow-of-Mail Claims

"In addition to the right of access to the courts, a prisoner's right to the free flow of incoming and outgoing mail is protected by the First Amendment." *Davis*, 320 F.3d at 351. A prisoner's mail may only be restricted to further "'one or more of the substantial governmental interests of security, order, and rehabilitation . . . [and] must be no greater than is necessary or essential to the protection of the particular governmental interest involved.'" *Id.* (quoting *Washington v. James*, 782 F.2d 1134, 1139 (2d Cir. 1986)). "The First Amendment protects prisoners' access to mail directly, unlike the right of access to courts, which protects prisoners' access to mail only derivatively and with respect to given claims." *Bellezza v. Holland*, No. 09-CV-8434, 2011 WL 2848141, at *6 (S.D.N.Y. July 12, 2011) (dismissing access-to-the-courts claim for failure to allege injury, but holding that plaintiff adequately alleged a violation of his right to send and receive mail). "It is thus not necessary to allege actual injury when asserting a violation of one's right to the free flow of mail." *Antrobus v. City of New York*, No. 11-CV-2524, 2014 WL 1285648, at *4 (S.D.N.Y. Mar. 27, 2014) (citations omitted).

As courts have attempted to balance the competing interests implicated when facilities place restrictions on prison mail, the courts have "consistently afforded greater protection to legal mail than to non-legal mail[.]" *Davis*, 320 F.3d at 351. "While a prisoner has a right to be present when his legal mail is opened, . . . an isolated incident of mail tampering is usually

insufficient to establish a constitutional violation." *Davis*, 320 F.3d at 351 (citations omitted). However, in *Washington v. James*, the Second Circuit found that "as few as two incidents of mail tampering could constitute an actionable violation (1) if the incidents suggested an ongoing practice of censorship unjustified by a substantial government interest, or (2) if the tampering unjustifiably chilled the prisoner's right of access to the courts or impaired the legal representation received." *Davis*, 320 F.3d at 351 (citing *Washington*, 782 F.2d at 1139); *see also Turner v. Safley*, 482 U.S. 78, 84-91 (1987) (prison regulations impinging constitutional rights must be "reasonably related to legitimate penological interests").

At this stage of the proceeding, and mindful of the Second Circuit's directive that a pro se plaintiff's pleadings must be liberally construed, the Court finds that plaintiff's First Amendment free-flow-of-mail claims against defendants Smoyer, Glinton, and Corrections Officers Doe #82-84 survive sua sponte review and require a response. In so ruling, the Court expresses no opinion as to whether these claims can withstand a properly filed dispositive motion.

## III.    CONCLUSION

**WHEREFORE**, it is hereby

**ORDERED** that the amended complaint, as modified by this Order, is accepted for filing and is the operative pleading; and it is further

**ORDERED** that the Clerk shall revise the docket to add Corrections Officers Rella, Toozer, Sweet, Rogers, Lynch, Matlock, Pesek, Witzigman, and Glinton as defendants, and identify the "Doe" defendants individually or by group as follows: (1) Corrections Officers John Doe #1-79; (2) Corrections Officer John Doe #80; (3) Corrections Officer John Doe #81; (4) Corrections Officers John Doe #82-84; (5) Corrections Officers John Doe #85-86; (6)

26

Corrections Sergeants John Doe #1-29; (7) Corrections Sergeants John Doe #30-32; and (8) Corrections Sergeant John Doe #33; and it is further

ORDERED that the following claims **SURVIVE** sua sponte review and require a response: (1) plaintiff's Fourth Amendment unlawful search claim against defendant Creigo; (2) plaintiff's Eighth Amendment conditions-of-confinement claims against defendants Burns, Kotory, Russell, Smoyer, Whitman, Huntley, Trotz, Palmer, Jennings, Rella, Toozer, Corrections Officers Doe #1-79, and Corrections Sergeants Doe #1-29 based on interference with his sleep; (3) plaintiff's Eighth Amendment conditions-of-confinement claims against defendants Huntley, Trotz, Sweet, Rogers, Lynch, Corrections Officer Doe #80, and Corrections Sergeants Doe #30-32 based on denying him access to meals between July 27 and August 1, 2019; and (4) plaintiff's First Amendment free-flow-of-mail claims against defendants Smoyer, Glinton, and Corrections Officers Doe #82-84; and it is further

ORDERED that all remaining claims are **DISMISSED** pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted; and it is further

ORDERED that upon receipt from plaintiff of the documents required for service, the Clerk shall issue summonses and forward them, along with copies of the amended complaint, to the United States Marshal for service on defendants Whitman, Creigo, Palmer, Jennings, Rella, Toozer, Sweet, Rogers, Lynch, and Glinton;[7] and it is further

ORDERED that upon the completion of service on defendants Whitman, Creigo, Palmer, Jennings, Rella, Toozer, Sweet, Rogers, Lynch, and Glinton, a response to plaintiff's

---

[7] Because Joshua E. McMahon, on behalf of the Office of the New York State Attorney General, has appeared in this action as counsel for defendants Burns, Kotory, Russell, Huntley, Smoyer, and Trotz, the Clerk need not issue a summons for these defendants.

amended complaint be filed by these defendants and defendants Burns, Kotory, Russell, Huntley, Smoyer, and Trotz, or their counsel, as provided for in the Federal Rules of Civil Procedure; and it is further

**ORDERED** that plaintiff must continue to take reasonable steps to ascertain the identity of the "Doe" defendants remaining in this action, and when identified, seek to amend the amended complaint to add the individuals as defendants in this action pursuant to Federal Rule of Civil Procedure 15(a); and it is further

**ORDERED** that all pleadings, motions and other documents relating to this action must bear the case number assigned to this action and be filed with the Clerk of the United States District Court, Northern District of New York, 7th Floor, Federal Building, 100 S. Clinton St., Syracuse, New York 13261-7367. Plaintiff must comply with requests by the Clerk's Office for any documents that are necessary to maintain this action. All parties must comply with Local Rule 7.1 of the Northern District of New York in filing motions; motions will be decided on submitted papers, without oral argument, unless otherwise ordered by this Court. **Plaintiff is also required to promptly notify the Clerk's Office and all parties or their counsel, in writing, of any change in his address; his failure to do so will result in the dismissal of this action**; and it is further

**ORDERED** that the Clerk of the Court shall provide plaintiff with copies of the unpublished decisions cited herein in accordance with the Second Circuit decision in *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam); and it is further

**ORDERED** that the Clerk shall serve a copy of this Decision and Order on plaintiff and

counsel for the defendants who have appeared in this action.

**IT IS SO ORDERED.**

Dated: March 9, 2020
Syracuse, NY

_____
Brenda K. Sannes
U.S. District Judge